### SHAW v. ROYERSFORD FOUNDRY & MACHINE CO.

(Circuit Court, S. E. D. Pennsylvania. July 5, 1910.)

#### No. 39.

PATENTS (§ 328*)—NOVELTY—SHAFT COUPLING.

The Shaw patent, No. 674,024, for a shaft coupling, is void for lack of patentable novelty.

In Equity. Suit by Frank Shaw against the Royersford Foundry & Machine Company. Decree for defendant.

Parsons, Hall & Bodell, for complainant.
Henry N. Paul, Jr., and Joseph C. Fraley, for respondent.

JOHN B. McPHERSON, District Judge. The patent in suit is No. 674,024, granted May 14, 1901, to Frank Shaw, the complainant, for improvement in shaft couplings. The application was filed in April, 1896, and its course through the office was tedious and beset with difficulties. It belongs to the class of compression couplings, and consists of an inner sleeve which encircles the two shaft ends, and an outer shell or ring which clamps the sleeve tightly around the shaft. Both shell and sleeve were confessedly old in the art, and the applicant relied mainly, if not wholly, upon the number and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

arrangement of certain slots in the sleeve as the novel feature of his invention.    But slotted sleeves also were old, and neither the number nor the arrangement of his slots made any impression upon the Office.    They were repeatedly decided to present no patentable improvement over the prior art, and in the final ruling upon this subject the applicant acquiesced.    Nothing need be added to the references in the file wrapper upon this subject.    After numerous vicissitudes the claims finally emerged in the form they now appear, and the patent was allowed.    The claims are as follows:

"(1) In a shaft-coupling, the combination with an outer shell consisting of sections having tapering inner faces, and clamping means for adjusting the sections endwise toward each other; of a shaft, and a sleeve for encircling the shaft, said sleeve being arranged within the outer shell and having its inner face normally of less diameter than said shaft to be encircled thereby, and being provided with substantially longitudinal movable parts for engaging said tapering inner faces and the periphery of the shaft, said substantially longitudinal movable parts having substantially concave inner faces, and having portions thereof connected and additional portions thereof separable from each other, for permitting the sleeve to be expanded to encircle the shaft without change in the curvature of the inner faces of said movable parts, substantially as and for the purpose described.

"(2) In a shaft-coupling, the combination with an outer shell consisting of sections having tapering inner faces, and clamping means for adjusting the sections endwise toward each other; of a shaft, and a sleeve for encircling the shaft, said sleeve being arranged within the outer shell and having its inner face normally of less diameter than said shaft to be encircled thereby, and said sleeve being formed with longitudinal substantially equidistant slots extending from one end face into proximity to the opposite end face, and thereby forming a plurality of longitudinal yielding parts connected together at one end of the sleeve, and having substantially concave inner faces, and being also formed with additional slots extending alternately between the former slots from said opposite end face of the sleeve into proximity to the former end face of the sleeve for dividing said yielding parts into yielding divisions or branches, the divisions or branches of each yielding part being connected at the free end of said part, and said parts and their divisions or branches having their portions on opposite sides of said slots separable from each other, for permitting the sleeve to be expanded to encircle the shaft without change in the curvature of the inner faces of said movable parts and their divisions or branches, substantially as and for the purpose set forth."

The defendant is charged with contributory infringement in making slotted sleeves of $1^{11}/_{16}$ inch gauge.    It will be seen that the claims are for a combination of three elements:  (1) A particular kind of shell; (2) a shaft; and (3) a particular kind of sleeve.    It is clear that the shell described was old; that a shaft was old; that slots in the sleeve were old;   and that the proposed combination of an old shell, an old shaft, and a slotted sleeve offered nothing new to the art.    The applicant showed six slots in place of four, although there is nothing in the specification or the claims to confine the number to six, but the Office refused to consider this as patentably novel, since nothing new was accomplished by the larger number or by the slightly different arrangement.    This eliminates everything in both claims except one feature of the sleeve that has not been referred to.    If this feature is also old, it is hopeless to look for novelty in the patent.    The sole point upon which the validity of the invention can be argued with even a faint expectation of success is that the sleeve has "its inner face normally of less

diameter than said shaft to be encircled thereby." Of course, the principal object of such a construction is to make it harder to force the sleeve over the shaft—or to force the shaft ends into the sleeve—and thus to make the grip of the coupling more effective. This result seems fairly obvious without the possession of special skill in any art. To take a familiar instance, the more tightly the joints of a fishing rod fit into one another, the less likely they are to discommode the angler by slipping apart. Numerous other examples might readily be given, but I think the fact may be assumed without illustration. It is not surprising, therefore, to find a well-established shop practice in the very art now in question, which antedated the patent by a good many years, and took advantage of the physical fact referred to. The defendant has proved beyond reasonable doubt, I think, that such a practice existed, and that sleeves of compression couplings were often bored less in diameter than the shaft for which they were intended. In the face of the evidence, I do not see how it is possible to support an opposing contention, and, if this fact has been established, nothing remains of the patent. The complainant's expert admitted without qualification that a structure would not infringe which responded to the claims in every other particular if the shaft corresponded in diameter precisely to the internal diameter of the sleeve. If, therefore, it was common practice before Shaw applied for his patent to bore the sleeve less in diameter than a shaft of the same gauge, it seems to follow irresistibly that there was no novelty in this remaining feature of the patent.

Much else might be said in reply to the complainant's case, but I do not think it necessary to continue the discussion. Other branches of the argument have been lucidly dealt with in the brief of defendant's counsel, and it would be difficult to say anything new thereon. It is just possible that the patent might be saved by confining it to the precise number and arrangement of slots shown in the drawings. The specification and the claims are too broad to be sustainable in view of the prior art, but, if they can be limited by the drawings, the patent might stand for the particular construction shown in the illustrative figures. But in that event the defendant does not infringe, for its set of slots differs in arrangement from the set of the drawings and the result would in like manner be the dismissal of the bill. I am convinced, however, that the patent should not have been granted, and I prefer to put the decision upon the single ground that no patentable novelty appears in the application.

A decree may be entered dismissing the bill, with costs.