SHAW v. ROYERSFORD FOUNDRY & MACHINE CO.†

(Circuit Court of Appeals, Third Circuit.   February 2, 1911.)

No. 1,408 (32).

PATENTS (§ 328*)—NOVELTY—SHAFT-COUPLING.
　　The Shaw patent, No. 674,024, for a shaft-coupling, is void for lack of patentable novelty.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by Frank Shaw against the Royersford Foundry & Machine Company.   Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 181 Fed. 168.

Frederic G. Bodell, William F. Hall, and Arthur E. Parsons, for appellant.

Henry N. Paul, Jr., and Joseph C. Fraley, for appellee.

Before GRAY and LANNING, Circuit Judges, and HOLLAND, District Judge.

LANNING, Circuit Judge.   By the decree of the Circuit Court the bill of complaint in this case was dismissed on the ground that complainant's patent, No. 674,024, for improvements in shaft-couplings, is void for want of patentable novelty.   The opinion of the court is reported in 181 Fed. 168.   Each of the two claims of the patent. as may be seen by a reference to that opinion, where they are quoted at length, is for a combination of three elements—a shell, a sleeve, and a shaft.   These elements are old, and, long prior to the patent in suit, they had been used in combination.   The patentee does not claim that he was the first to use such a combination.   His invention, he declares in his specification, "consists, essentially, in the combination, construction, and arrangement of the outer shell and the inner sleeve of the shaft-coupling."   That is to say, the substance of his invention, according to his statement, is to be found in a combination in which two of the three elements have certain distinguishing peculiarities.   The shaft is concededly the same as the shaft of the prior art.   The outer shell is made to fit over the inner sleeve, in which respect the prior art is also followed.   The inner sleeve is of peculiar construction. There is nothing in the prior art precisely like it; but the Patent Office held, while the specification remained in its original form, that there was nothing in it which distinguished it in a patentable sense from other sleeves of the prior art.

The sleeve of the patent has cut through it a plurality of longitudinal slots, one-half of which extend from one end of the sleeve (which we will call end A) nearly to the other end (which we will call end B), and the other half of which, alternating with the slots of the first half, extend from end B nearly to end A.   In the prior art, Steadman, in his patent No. 234,343, shows a sleeve in which he cut two slots in opposite sides of the sleeve from end A nearly to the middle part of

---

the sleeve, and two other slots in line with the two slots above mentioned from end B nearly to the middle part of the sleeve, and also two other slots in opposite sides of the sleeve midway between the two lines of slots above mentioned from the middle part of the sleeve nearly to ends A and B. Steadman, therefore, had a plurality of longitudinal slots in the sleeve of his patent, and he used the sleeve in combination with a shaft and an outer shell. We think the Patent Office was right in rejecting certain of the claims on Steadman. At all events, Shaw acquiesced in the rejection and finally inserted in each of the two claims allowed, and now sued on, a limitation to the effect that the sleeve of his patent has "its inner face normally of less diameter than said shaft to be encircled thereby." But this feature of a sleeve was also old. The proofs show beyond all doubt that long prior to tne grant of Shaw's patent it was a common shop practice to bore sleeves whose diameters were slightly less than the diameters of the shafts which the sleeves were to encircle.

The question, therefore, is whether the combination, with the limitation as to the form of the sleeve above mentioned, is such a novel combination that it should be upheld as a valid patent. The claims rejected in the Patent Office were not the claims now sued on, and the patentee is not now insisting that the claims in suit shall be construed as the equivalents of any of the rejected claims. His contention is that, by amendments while his application was pending in the Patent Office, he so far limited the scope of his combination as to avoid anticipation. But, though his precise combination is not found in the prior art, does it differ from that art in any patentable sense? Are the differences between his combination and the combinations of the prior art sufficient to disclose real invention? The Circuit Court thought not, and it concluded its opinion with the statement that it preferred to put the decision "upon the single ground that no patentable novelty appears in the application."

After careful consideration of the proofs and briefs, we are convinced that the conclusion of the Circuit Court is correct, and that it put its decision on the proper ground. There was nothing patentably novel in increasing the number of slots in the sleeve or in making its diameter less than the diameter of the shaft. There was nothing patentably novel in making the shell fit the sleeve. The greater the number of slots in a sleeve, the greater will be its number of yielding or resilient parts, and the more nearly will the expansion of the sleeve approach perfect radial expansion when the shaft is inserted into it. But there is nothing in the patent to indicate what number of slots or yielding parts there must be, beyond the fact that there must be more than one of such slots and more than one of such yielding parts. Steadman had this. Consequently we find nothing in Shaw's combination patentably distinguishable from the combination of Steadman.

The decree is affirmed, with costs.